UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                 )
MARY SILVA,                      )
                                 )
                Plaintiff,       )
                                 )
        v.                       )        CIVIL ACTION
                                 )        NO. 20-11866-WGY
CITY OF NEW BEDFORD, PAUL FONSECA,)
BROCK MORRISETTE, and            )
JOHN DOES 1-9,                   )
                                 )
                Defendant.       )
_____)
```

YOUNG, D.J.                                    May 10, 2022

**MEMORANDUM OF DECISION**

## I.   INTRODUCTION

Beginning in March 2020, the Massachusetts Supreme Judicial Court issued a series of administrative orders in response to the COVID-19 pandemic which tolled all civil statutes of limitations from March 17, 2020, until June 30, 2020.[1]  Mary Silva ("Silva") is a <u>pro se</u> civil rights plaintiff who seeks the benefit of these tolling orders.

---

[1] <u>See</u> Third Updated Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 (Coronavirus) Pandemic at 5, Massachusetts Supreme Judicial Court (June 24, 2020), <u>https://www.mass.gov/doc/sjc-third-updated-order-regarding-court-operations-under-the-exigent-circumstances-created-by/download</u>.

Silva filed suit after police allegedly (1) set fire to her home by deploying flash grenades during a search and (2) later initiated an unlawful traffic stop.  Verified Compl. ("Compl.") ¶¶ 17-32, ECF No. 1.  She brought seven counts comprising constitutional violations under 42 U.S.C. § 1983 ("section 1983") and intentional torts.  Id. ¶¶ 33-52.  New Bedford Police Detective Paul Fonseca ("Fonseca") and the City of New Bedford ("New Bedford") (collectively, the "Defendants") moved to dismiss all counts on the grounds that the federal claims are untimely and the state claims without merit.  Defs.' City New Bedford & Paul Fonseca Mot. Dismiss ("Mot. Dismiss"), ECF No. 17.  As to the federal claims, the dispute centers on an issue of first impression: whether the Supreme Judicial Court's tolling orders apply to section 1983 actions.  See Defs.' City New Bedford & Paul Fonseca Mem. Law Support Mot Dismiss ("Defs.' Mem.") 6-9, ECF No. 18; Pl.'s Mem. Law Support Opp'n Defs.' Mot. Dismiss ("Pl.'s Mem.") 4-8, ECF No. 30.

After hearing arguments on December 8, 2021, the Court took the matter under advisement.  Electronic Clerk's Notes, ECF No. 36.  On December 22, 2021, the Court entered an order allowing in part and denying in part the motion to dismiss.  Order 1, ECF No. 37.  In so ruling, the Court upheld Silva's federal claims as timely, allowing four counts -- all comprising section 1983 claims -- to survive.  This Memorandum of Decision explains the

Court's reasoning as to timeliness and now holds that the Supreme Judicial Court's tolling orders apply to section 1983 actions.

### A.   Facts and Procedural History

On **October 10, 2017**, while Silva was at the New Bedford Police Station, Fonseca, Massachusetts State Trooper Brock Morrisette ("Morrisette"), and SWAT team members executed a warrant to search her home for evidence on her boyfriend -- a homicide suspect.  Compl. ¶¶ 17, 20-21.  Upon entry they deployed flash grenades, which started a fire that spread throughout the home, destroying Silva's property and displacing Silva and her son.  Id. ¶¶ 22-23, 26.  **That same evening**, after leaving the station, Silva was stopped by five New Bedford police officers, who drew their guns and ordered her to exit her car.  Id. ¶ 28, 29.  The officers visually searched the car, then left without explanation for the stop.  Id. ¶ 30.

On **October 15, 2020**,[2] Silva filed a complaint against: Fonseca, id. ¶ 6; Morrisette,[3] id. ¶ 10; Michael Gomes, the

---

[2] The parties dispute whether the date of filing corresponds to the date Silva placed her complaint in the mail or the date the clerk's office received it.  Pl.'s Mem. 1, 8; Reply Mem. Response Pl.'s Opp'n Mot. Dismiss 1-2, ECF No. 35.  As discussed, infra II.B., the law is clear that a complaint is filed upon receipt, see McIntosh v. Antonino, 71 F.3d 29, 36 (1st Cir. 1995) (citing Fed. R. Civ. P. 3).

[3] The summons as to Morrisette was returned unexecuted on September 9, 2021.  Process Receipt Return 1, ECF No. 16.

former Chief of the New Bedford Police Department, id. ¶ 5; Daniel Bennet, the former Secretary of the Massachusetts Executive Office of Public Safety and Security, id. ¶ 2; the Commonwealth of Massachusetts, id. ¶¶ 3-4; the Massachusetts Executive Office of Public Safety and Security, id. ¶ 3; and the New Bedford Police Department, id. ¶ 4.  Silva also sued John Does 1-9, individuals of unknown identities comprised of SWAT team members and New Bedford police officers.  Id. ¶¶ 7-9, 11-16.

Silva brought seven counts.  Compl. ¶¶ 33-52.  Counts one through five arise from the search of her home and counts six and seven from the subsequent traffic stop.  Id.

On March 9, 2021, another session of this Court dismissed: the Eighth Amendment claims in counts one and two, Mem. & Order ("Judge Sorokin's Order") 7, 9, ECF No. 5; the Fifth Amendment claim in count six, id. 7, 9; the claims against Michael Gomes[4] and Daniel Bennet in count five, id. 5, 8; and the claims against the New Bedford Police Department, the Commonwealth of Massachusetts, and the Massachusetts Executive Office of Public Safety and Security in count five, id. 6, 8-9.  The Court then

---

[4] Silva sued Michael Gomes in his official capacity.  Compl. ¶ 5.  The May 9 order noted that Silva "may amend the complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure to include" a claim against Gomes in his individual capacity, Judge Sorokin's Order 7, but Silva has not done so.

[4]

added New Bedford to the docket as "the sole defendant" in count five.  See id. at 6-7, 8.

The section 1983 claims which remained after the May 9 order alleged: violations of the Fourth Amendment against Fonseca, Morrisette, and John Does 1-5 (counts one and two), Compl. ¶¶ 33-39; a conspiracy to deprive civil rights in violation of the First, Fourth, and Fourteenth Amendments against Fonseca, Morrisette, and John Does 1-5 (count four), id. ¶¶ 43-44; municipal liability against New Bedford (count five), id. ¶¶ 45-47; and violations of the Fourth and Fourteenth Amendments against John Does 6-9 (count six), id. ¶¶ 48-49.  The remaining tort claims alleged: trespass to chattel and conversion against Fonseca, Morrisette, and John Does 1-5 (count three), id. ¶¶ 40-42; and intentional infliction of emotional distress against John Does 6-9 (count seven), id. ¶¶ 50-52.

On March 11, 2021, the case was reassigned to this session of the Court.  Electronic Not. Case Reassignment, ECF No. 10. On September 29, 2021, Fonseca and New Bedford moved to dismiss all counts.  Mot. Dismiss.  The parties have fully briefed this motion.  See Defs.' Mem; Pl.'s Mem.; Reply Mem. Response Pl.'s Opp'n Mot. Dismiss ("Defs.' Reply") 1-2, ECF No. 35; Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n") 8, ECF No. 29.  Focusing on the federal claims, Fonseca and New Bedford argued Silva's section 1983 action was (1) filed after the applicable

limitations period expired and (2) not subject to the Supreme Judicial Court's tolling orders.  Defs.' Mem. 3-9.

On December 22, 2021, the Court entered an order allowing in part and denying in part the motion to dismiss.  Order 1. First, the Court dismissed with prejudice: "count one in its entirety; count three in its entirety; count four insofar as it alleges a conspiracy to deny the right of access to courts pursuant to the First Amendment; and count seven in its entirety."  Order 2 (citations omitted).  Second, the Court dismissed without prejudice: "count four insofar as it alleges a conspiracy to deny equal protection of the law pursuant to the Fourteenth Amendment; and count six insofar as it alleges the denial of equal protection of the law pursuant to the Fourteenth Amendment."  Id. 2 (citations omitted).  Third, the Court denied the motion to dismiss as to: "count two in its entirety; count four insofar as it alleges a conspiracy to deny freedom from excessive force pursuant to the Fourth Amendment; count five in its entirety; and count six insofar as it alleges an unlawful seizure and the use of excessive force pursuant to the Fourth Amendment."  Id. 2-3 (citations omitted).

This Memorandum of Decision explains why the four surviving counts (counts two, four, five, and six), all arising under section 1983, are timely.

## II.  ANALYSIS

[6]

This Memorandum of Decision first considers whether the complaint was timely filed on its face.  Concluding it was not, it next examines whether the statute of limitations for the federal claims was tolled.  This question hinges on whether the tolling orders issued by the Supreme Judicial Court apply to section 1983 actions.  Section 1988 of Title 42 of the U.S. Code instructs federal courts to bridge the interstices in section 1983 using state law so long as it is not inconsistent with federal law.  See Bd. of Regents v. Tomanio, 446 U.S. 478, 486 (1980).

Silva argues the tolling orders apply to her section 1983 claims by way of section 1988.  Pl.'s Mem. 4-8.  The Defendants counter that the section 1988 borrowing framework does not encompass tolling orders issued by a state's highest court. Defs.' Mem. 6-9.

Because (1) Supreme Court and First Circuit precedent broadly authorize federal courts to borrow state tolling rules, and (2) the tolling orders are not inconsistent with the policies underlying section 1983, the Supreme Judicial Court's tolling orders apply to section 1983 actions, rendering Silva's claims timely filed.

### A.   Standard of Review

To withstand a motion to dismiss, a complaint must "state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P.

[7]

12(b)(6).  Courts "draw every reasonable inference" in favor of the plaintiff.  Berezin v. Regency Sav. Bank, 234 F.3d 68, 70 (1st Cir. 2000).  "A document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); see also Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

"Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that 'the facts establishing the defense are clear on the face of the plaintiff's pleadings.'" Trans-Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (quoting Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001)) (brackets omitted).  In such cases, "[w]here the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to 'sketch a factual predicate' that would warrant the application of either a different statute of limitations period or equitable estoppel, dismissal is appropriate."  Id. (quoting LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509-10 (1st Cir. 1998)). In other words, courts ought dismiss "when the pleader's

allegations leave no doubt that an asserted claim is time-barred."  LaChapelle, 142 F.3d at 509.

**B.   Timeliness of the Complaint on its Face**

The Defendants argue Silva's claims are "barred by the applicable three-year statute of limitations," as the complaint was filed on October 15, 2020, but "on its face" alleges the Defendants' conduct took place on October 10, 2017.  Defs.' Mem 3-4.  Silva counters that she timely filed her complaint by placing it in the mail on September 28, 2017.  Pl.'s Mem. 1, 8. The Defendants are correct; absent tolling, Silva's section 1983 claims would be time-barred.

Section 1983 does not contain an internal statute of limitations, so courts must borrow from "the law of the State in which the cause of action arose."  Wallace v. Kato, 549 U.S. 384, 387 (2007); see also 42 U.S.C. § 1988 (instructing that, where Title 42 is deficient, the common law, statutes, and constitution of the state govern unless inconsistent with federal law).  The relevant statute of limitations is that which governs personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 276-80 (1985); Jardín De Las Catalinas Ltd. P'ship v. Joyner, 766 F.3d 127, 132-33 (1st Cir. 2014); see also Owens v. Okure, 488 U.S. 235, 236 (1989).  Thus, in Massachusetts, a three-year limitations period applies to section 1983 actions. See Mass. Gen. Laws ch. 260, § 2A (providing a three-year

limitations period for personal injury actions); <u>Nieves</u> v.
<u>McSweeney</u>, 241 F.3d 46, 51 (1st Cir. 2001) (applying a three-
year statute of limitations to the plaintiff's section 1983
claims).

　　While federal law governs the accrual of a section 1983
action, <u>see</u> <u>Wallace</u>, 549 U.S. at 388, Massachusetts procedural
rules govern the "application" -- that is, the computation -- of
the limitations period, <u>see</u> <u>Wilson</u>, 471 U.S. at 269 ("[T]he
length of the limitations period [for section 1983 claims], and
closely related questions of tolling and **application**, are to be
governed by state law." (emphasis added)); <u>Carreras-Rosa</u> v.
<u>Alves-Cruz</u>, 127 F.3d 172, 174 (1st Cir. 1997) ("[W]hen the
federal court borrows the state statute of limitations, so too
the date on which the limitations period starts to run should be
determined by the state law defining the 'application' of the
limitations period.").  Under federal law, a section 1983 claim
accrues "when all of the acts comprising the specific
constitutional violation have been completed," and the plaintiff
"knows, or should know" of the injury and its causal connection
to the defendant.  <u>Ouellette</u> v. <u>Beaupre</u>, 977 F.3d 127, 135-36
(1st Cir. 2020).  Pursuant to Rule 6 of the Massachusetts Rules
of Civil Procedure, the clock starts running "the day following
the day of [accrual], with the last day for filing suit being
the anniversary date of the event. . . ."  <u>Poy</u> v. <u>Boutselis</u>, 352

F.3d 479, 483 (1st Cir. 2003) (applying Mass. R. Civ. P. 6(a) to compute the limitations period for a section 1983 action). Here, Silva alleges both the search and the traffic stop occurred on October 10, 2017.[5]  Compl. ¶ 23, 28.  Accordingly, the limitations period began to run on October 11, 2017, and the section 1983 claims expired on October 10, 2020.

Federal procedural rules govern when Silva commenced this action.  See West v. Conrail, 481 U.S. 35, 39 (1987) (holding that an action under federal law which "borrow[s] a limitations period from another statute," commences "in compliance" with Rule 3 of the Federal Rules of Civil Procedure); see also McIntosh v. Antonino, 71 F.3d 29, 36 (1st Cir. 1995) (holding that Rule 3 of the Federal Rules of Civil Procedure "adequately covers" the commencement of an action in federal court and thus applies to section 1983 claims).  Under the Federal Rules of Civil Procedure, a "civil action is commenced by filing a complaint with the court," Fed. R. Civ. P. 3, and a complaint "not filed electronically is filed by **delivering** it" either "to the clerk" or "to a judge," Fed. R. Civ. P. 5(d)(2) (emphasis

---

[5]  As to the search, Silva alleges Morrisette and Fonseca did not immediately "inform[] her of the cause of the fire" but does not state when she ascertained its cause and does not expressly argue the accrual period was delayed.  See Compl. ¶ 27; see generally Pl.'s Mem.  Given that the Supreme Judicial Court's tolling orders apply to section 1983 actions, however, the Court need not decide whether accrual was delayed and assumes it was not.  See supra section II.C.

added).  Silva alleges she mailed the complaint to the clerk's office on September 28, 2020, Pl.'s Opp'n 8, but concedes it was not "received or docketed" -- i.e., **delivered** -- until October 15, 2020, see Pl.'s Mem. 1.  Accordingly, Silva commenced the action on October 15, 2020 -- five days after her claims expired.

Thus, unless the limitations period was tolled, Silva's section 1983 claims are untimely.

### C.   Tolling the Statute of Limitations

Silva asserts that the Supreme Judicial Court's tolling orders apply to her claims arising under 42 U.S.C. § 1983. Pl.'s Mem. 4-8.  The Defendants counter that federal law does not authorize federal courts to borrow "temporary state court tolling orders" for section 1983 actions.  Defs.' Mem. 7.

The Supreme Judicial Court's orders tolled "each and every civil statute of limitations" from March 17, 2020, until June 30, 2020.[6]  Shaw's Supermarkets, Inc. v. Melendez, 488 Mass. 338,

---

[6] The Supreme Judicial Court tolling orders state in pertinent part:

All civil statutes of limitations were tolled by Prior Supreme Judicial Court Orders from March 17, 2020, through June 30, 2020, and will not be tolled any further unless there is a new surge in COVID-19 cases in the Commonwealth and the SJC determines that a new or extended period of tolling is needed . . . . The new date for the expiration of a statute of limitation is calculated as follows: determine how many days remained as of March 17, 2020, until the statute of

342 (2021).  Should they apply to Silva's claims, her claims
would have expired January 24, 2021, rather than October 10,
2020, rendering them timely.

### 1. The 42 U.S.C. § 1988 Borrowing Framework

Section 1983 does not contain internal tolling rules.
Section 1988 "'quite clearly instructs federal courts to refer
to state statutes' when federal law provides no rule of decision
for actions brought under [section] 1983."  <u>Tomanio</u>, 446 U.S. at
484 (quoting <u>Robertson</u> v. <u>Wegmann</u>, 436 U.S. 584, 593 (1978))
(brackets omitted).  Section 1988 provides:

> [I]n all cases where [provisions of this Title] are
> not adapted to the object, or are deficient in the
> provisions necessary to furnish suitable remedies and
> punish offenses against law, the **common law, as
> modified and changed by the constitution and statutes
> of the State** wherein the court having jurisdiction of
> such civil or criminal cause is held, so far as the
> same is **not inconsistent with the Constitution and
> laws of the United States**, shall be extended to and
> govern the said courts in the trial and disposition of
> the cause . . . .

42 U.S.C. § 1988 (emphasis added).

---

limitation would have expired, and that same number of
days will remain as of July 1, 2020 in civil cases . .
. . .  For example, if fourteen (14) days remained as
of March 17 before the statute of limitation would
have expired in a civil case, then fourteen (14) days
will continue to remain as of July 1, before the
statute of limitation expires (i.e., July 15) . . . .

Third Updated Order, <u>supra</u>.

In view of this borrowing scheme, the Supreme Court in
Board of Regents v. Tomanio held that not only state statutes of
limitations but also the "**coordinate tolling rules**" apply to
section 1983 actions as long as such rules are not
"'inconsistent' with federal law."  446 U.S. at 486 (emphasis
added) (quoting 42 U.S.C. § 1988).  Considering the federal law
on tolling, the Court determined that, "in general, state
policies of repose cannot be said to be disfavored in federal
law."  Id. at 488.  The Court then looked to the specific
"policies underlying [section] 1983" -- namely, "recovering
compensation and fostering deterrence" -- as well as the general
federal interest in promoting uniformity, and held that New
York's rule precluding tolling was not inconsistent therewith.
Id. at 488-92.

Given Tomanio, the First Circuit has held that in a section
1983 action "**tolling is governed by state law.**"  Torres v.
Superintendent of Police, 893 F.2d 404, 407 (1st Cir. 1990)
(emphasis added); see also Benitez-Pons v. Puerto Rico, 136 F.3d
54, 59 (1st Cir. 1998) (stating that the "tolling of the statute
of limitations" for a section 1983 claim is "governed by state
law").  Regardless how this rule reads, however, it is not
categorical.  For example, there is a circuit split on whether
the **equitable** tolling of section 1983 claims is governed by
state or federal law, see Pearl v. City of Long Beach, 296 F.3d

[14]

76, 83 (2nd Cir. 2002) (identifying a "split of authority" and listing conflicting rules in several circuits), and the First Circuit has left open this question, <u>see, e.g.</u>, <u>Vistamar, Inc.</u> v. <u>Fagundo-Fagundo</u>, 430 F.3d 66, 71-72 (1st Cir. 2005) (declining to decide the issue since the plaintiff failed to establish equitable tolling under either state or federal law); <u>Benitez-Pons</u>, 136 F.3d at 61 (same); <u>Torres Ramirez</u> v. <u>Bermudez Garcia</u>, 898 F.2d 224, 229 (1st Cir. 1990) (same).

### 2. Caselaw Outside the First Circuit

Like equitable tolling, the issue here is an open question in this Circuit.[7]  Relevant caselaw outside the Circuit is

---

[7] Note that another session of this Court indicated in dicta that the tolling orders apply to section 1983.  <u>See</u> <u>Veal</u> v. <u>Comm'r of Bos. Ctrs. for Youth & Families</u>, No. 21-cv-10265-ADB, 2022 WL 715712, at *5 (D. Mass. Mar. 10, 2022) (Burroughs, J.). There, the plaintiff failed to timely file regardless whether the tolling orders applied.  <u>Id.</u>  The Court stated:

> **Taking into account the Massachusetts Supreme Judicial Court's . . . June 24, 2020 Order,** which tolled statutes of limitations from March 17, 2020 until June 30, 2020 due to the COVID-19 pandemic, the time for filing the instant action expired, at the latest, on July 10, 2020.

<u>Id.</u> (emphasis added).

Additionally, another session of the Court held that the Supreme Judicial Court's tolling orders do not toll statutes of limitations in Title VII actions.  <u>See</u> <u>Harrington</u> v. <u>Lesley Univ.</u>, No. 20-cv-11718-DPW, 2021 WL 3616075, at *20 (D. Mass. Aug. 12, 2021) (Woodlock, J.).  As discussed, however, Title VII decisions are not a useful benchmark.  <u>See</u> <u>infra</u> section II.C.2.

confined to just a few jurisdictions but tends toward applying pandemic-related state tolling orders to section 1983 claims.

Two cases are on point: two sessions of the District Court of Kansas have held that a series of administrative orders issued by the Kansas Supreme Court which tolled statutes of limitations in response to the COVID-19 pandemic apply to section 1983 actions.  See Tran v. Cty. of Douglas, No. 21-cv-2310-KHV, 2021 WL 5505455, at *5-6 (D. Kan. Nov. 24, 2021); Fullen v. City of Salina, No. 21-cv-4010-JAR-TJJ, 2021 WL 4476780, at *5-6 (D. Kan. Sept. 30, 2021).

Additionally, most federal courts deciding the issue have held that pandemic-related state **executive orders** which toll civil statutes of limitations apply to section 1983 claims.  See Rich v. New York, No. 21-cv-3835-AT, 2022 WL 992885, at *8 (S.D.N.Y. Mar. 31, 2022); Paul v. Capra, No. 20-cv-5154-NSR, 2022 WL 992845, at *6 (S.D.N.Y. Mar. 31, 2022); Lewis v. Westchester Cty., No. 20-cv-9017-VB, 2021 WL 3932626, at *2 (S.D.N.Y. Sept. 2, 2021); Barnes v. Uzu, No. 20-cv-5885-KMK, 2022 WL 784036, at *9-11 (S.D.N.Y. Mar. 15, 2022); Bowers v. City of Salamanca, No. 20-cv-1206-LJV, 2021 WL 2917672, at *5-6 (W.D.N.Y. July 12, 2021); Bonilla v. City of New York, No. 20-cv-1704, 2020 WL 6686531, at *2-3 (E.D.N.Y. Oct. 3, 2020); Connelly v. Komm, No. 20-cv-1060-JCH, 2021 WL 5359738, at *3-5 (D. Conn. Nov. 16, 2021); Mackey v. Rising, No. 20-cv-13408,

2021 WL 4034226, *2 (E.D. Mich. 2021); <u>Bowles</u> v. <u>Sabree</u>, No. 20-cv-12838, 2022 WL 141666, at *9 (E.D. Mich. Jan. 14, 2022).  <u>But see</u> <u>Johnson</u> v. <u>Fargione</u>, No. 20-cv-764-LEK-CFH, 2021 WL 1406683, at *3 (N.D.N.Y. Feb. 17, 2021) (holding that the "plaintiff fail[ed] to demonstrate that a New York State executive order applied to actions commenced in Federal court alleging violations of the U.S. Constitution").

The Defendants cite <u>Willard</u> v. <u>Industrial Air, Inc.</u>, No. 20-cv-823, 2021 WL 309116, at *3 (M.D.N.C. Jan. 29, 2021), as "reject[ing] the argument that state court tolling orders for the pandemic apply to federal claims brought in federal court." Defs.' Mem. 7.  This high level of generality obscures a crucial distinction between <u>Willard</u> and the present case: rather than a section 1983 claim, <u>Willard</u> involved a Title VII claim for which federal law expressly prescribes a ninety-day limitations period, <u>see</u> 42 U.S.C. § 2000e-5(f)(1). See <u>Willard</u>, 2021 WL 309116, at *3.  Whether a federal statute of limitations is **supplanted** by state tolling orders is a far cry from whether a federal statute that **lacks a statute of limitations** may borrow state tolling orders to **bridge the gap.**

### 3. Whether the Borrowing Framework Encompasses the Supreme Judicial Court's Tolling Orders

Given the dearth of direct authority, the Court now examines the question in this case.  The issue is twofold: (1)

[17]

whether the section 1988 borrowing framework encompasses orders
of this kind, and, if so, (2) whether the orders are
inconsistent with federal law.

### a. Whether the Borrowing Framework Encompasses Orders of this Kind

First, the borrowing framework devised by 42 U.S.C § 1988
and pertinent caselaw encompasses the Supreme Judicial Court's
tolling orders.  Given (1) the instructive language of section
1988, (2) the Supreme Court's unambiguous directive for federal
courts to adopt "the coordinate tolling rules" of the forum
state, Tomanio, 446 U.S. at 484-85, and (3) the First Circuit's
embrace of Tomanio and insistence that state law governs
tolling, see, e.g., Torres, 893 F.2d at 407, the weight of
authority indicates the tolling orders fall within the category
of state law which federal courts are authorized to borrow in
section 1983 actions.  See supra section II.C.1.-2.

The Defendants provide two reasons this is not so: first,
they argue applying the Supreme Judicial Court's tolling orders
would "circumvent the independence of the federal court by
importing state court procedural orders," Defs.' Mem. 9; second,
they argue the Supreme Judicial Court's tolling orders were "not
a legislative act" and thus may not apply in federal court,
Defs.' Mem. 8.  Both contentions fall short.

### i. Importing State Procedural Rules

The Defendants rely on two cases, West v. Conrail, 481 U.S. 35 (1987), and McIntosh v. Antonino, 71 F.3d 29 (1st Cir. 1995), for the notion that applying the tolling orders would wrongfully "import[] state court procedural orders" into federal court. Defs.' Mem. 6-7, 9.  Such reliance is misplaced.

The Supreme Court in West held that a cause of action based on federal law which borrows a statute of limitations from a different **federal** statute nevertheless commences pursuant to Rule 3 of the Federal Rules of Civil Procedure, not the provisions for service contained in the borrowed statute.  481 U.S. at 39.  In so holding, the Supreme Court stated: "[W]hen it is necessary for us to borrow a statute of limitations for a federal cause of action, we borrow **no more than necessary**."  Id. (emphasis added).  Recognizing West's teaching, the First Circuit in McIntosh carried it one step further and held that Rule 3 of the Federal Rules of Civil Procedure also commences a federal cause of action which borrows a statute of limitations from **state** law.  71 F.3d at 35-36.  The First Circuit maintained that "when bridging interstices in federal law, federal courts should borrow **'only what is necessary to close the gap left by Congress.'**"  Id. at 36 (quoting West, 481 U.S. at 40 n.6) (emphasis added).

First, that federal courts ought borrow "only what is necessary to close the gap" does not "exclude[] consideration of

[19]

temporary state court tolling orders."  Defs.' Mem. 7 (quoting
West, 481 U.S. at 40 n.6).  To the contrary, in relying on
McIntosh and West, the Defendants conflate rules of filing with
tolling rules and, in so doing, discount binding precedent.  The
Supreme Court in Wilson v. Garcia held that in section 1983
suits "the **length of the limitations period**, and closely related
questions of **tolling** and **application**, are to be governed by
state law."  471 U.S. at 269 (emphasis added).  In Tomanio, the
Supreme Court reiterated that for section 1983 claims, "a state
statute of limitations and the **coordinate tolling rules** are more
than a technical obstacle to be circumvented if possible.  In
most cases, they are binding rules of law."  446 U.S. at 484
(emphasis added).  Holding that state tolling rules exceed "what
is necessary to fill the gap," West, 481 U.S. at 40 n.6, would
require disregarding Wilson and Tomanio.

Indeed, in Poy v. Boutselis, the First Circuit refused to
hold that a facet of a limitations policy Wilson expressly
authorized federal courts to borrow was "more than necessary."
352 F.3d at 483-84.  There, the defendant argued that West and
McIntosh forbade the court from borrowing Rule 6(a) of the
Massachusetts Rules of Civil Procedure, which provides that a
statute of limitations begins to run the day after a claim
accrues.  352 F.3d at 483-84.  The First Circuit rejected the
argument that **application** rules are not necessary to borrow

because it "contradicts the Supreme Court's decision in <u>Wilson</u>"
and in <u>McIntosh</u>, which provide "explicit authorization to look
to state law regarding questions of application."  See <u>id.</u> at
484 & n.3.  Here, the Defendants embark on the same fruitless
path as to tolling.

Second, the Defendants' characterization of the tolling
orders as "state procedural rules" is of no consequence.  Defs.'
Mem. 9.  The First Circuit explicitly endorsed the borrowing of
state procedural rules for section 1983 claims in <u>Boutselis</u>.
There, the defendant cited <u>McIntosh</u> and argued the requirement
that federal courts borrow state application rules "encompasses
only those instances in which a state statute, rather than a
**rule of procedure**, sets forth the application rule."  <u>Boutselis</u>,
352 F.3d at 484 & n.3.  The First Circuit rejected this "pained
distinction," as <u>McIntosh</u> "deals with the inapposite question of
adopting state rules of filing."  See <u>id.</u>

Third, both <u>West</u> and <u>McIntosh</u> involved conflicts of law:
<u>West</u>, a conflict between Federal Rule of Civil Procedure 3 and
the Labor Management Relations Act, 481 U.S. at 38-39; and
<u>McIntosh</u>, a conflict between Federal Rule of Civil Procedure 3
and Massachusetts Rule of Civil Procedure 3, 71 F.3d at 36-37.
Since a federal law on point existed, the First Circuit in
<u>McIntosh</u> could identify "no lacuna that must be filled by
reference to state law."  71 F.3d at 36.  Here, federal law does

not present a conflicting rule but rather is deficient,
resorting to state law to close its gaps with respect to
statutes of limitations.

### ii. Judge-Made Versus Statutory Law

The Defendants next argue that "the tolling order by the
Supreme Judicial Court was not a legislative act, but rather
merely a court order of superintendence of its lower courts,"
and as such does not apply to claims in federal court.  Defs.'
Mem. 8.  This argument is unavailing.

The borrowing scheme for section 1983 is not limited to
legislative acts; rather, section 1988 provides for borrowing
judge-made law as well.  See 42 U.S.C. § 1988(a) (instructing
federal courts to borrow "the **common law**, as modified and
changed by the constitution and statutes of the State" (emphasis
added)).  The Defendants offer no authority to support their
claim that orders issued by a state's highest court are so
distinct from state common law and statutory law that they fall
outside the reach of section 1988.

Although the pertinent cases involved state statutes, the
Supreme Court by the language in its holdings has not
distinguished between sources of state law.  See Tomanio, 446
U.S. at 485 ("[Section] 1988 authorizes federal courts to
disregard an otherwise applicable **state rule of law** only if the
**state law** is 'inconsistent with the Constitution and laws of the

[22]

United States.'" (emphasis added)); Wilson, 471 U.S. at 269
(stating that limitations periods, tolling, and application "are
to be governed by **state law**" (emphasis added)); id. (explaining
that "**state law** shall only apply 'so far as the same is not
inconsistent with' federal law" (quoting 42 U.S.C. § 1988)
(emphasis added)).  Sensibly so, as this distinction would
frustrate the purpose of applying state tolling rules in section
1983 actions: to "rely[] on the **State's wisdom** in setting a
limit, and **exceptions thereto**, on the prosecution of a closely
analogous claim."  See Tomanio, 446 U.S. at 485-86 (emphasis
added).

The First Circuit has heeded this message, borrowing not
only from state statutes but also state court rulings.  See,
e.g., Carreras-Rosa, 127 F.3d at 175 (using a Puerto Rico
Supreme Court decision to determine the timeliness of a section
1983 claim).  Moreover, in Boutselis, the First Circuit
indicated a reluctance to split hairs over sources of state law
-- there, between state statutes and state rules of procedure.
352 F.3d at 484 & n.3.

Thus, that the tolling orders were not a "legislative act,"
Defs.' Mem. 8, is not dispositive.

### b. Whether the Tolling Orders Are Inconsistent with Federal Law

Having determined that section 1988 encompasses the Supreme
Judicial Court's tolling orders, the second issue is whether
they are "inconsistent" with federal law.  See 42 U.S.C. § 1988.
Silva argues they are not, Pl.'s Mem. 6-7, but the Defendants do
not reach this issue, Defs.' Mem. 8.  The tolling orders are not
inconsistent with federal law, as their application undermines
neither the policies behind section 1983 nor the federal
interest in uniformity.

As an initial matter, that the Supreme Judicial Court's
tolling orders would allow the present action while federal law
(which does not provide for automatic tolling during the COVID-
19 pandemic) would preclude the action as untimely does not
render the orders "inconsistent" with federal law.  The "success
of the [section] 1983 action [is not] the only benchmark. . . ."
Robertson v. Wegmann, 436 U.S. 584, 593 (1978).  Indeed, in
Robertson v. Wegmann, the Supreme court held that "a state
statute cannot be considered 'inconsistent' with federal law
merely because the statute causes the plaintiff to lose the
litigation."  Id.  The same ought be true for the inverse but
with even greater force: state law is not "inconsistent" with
federal law simply for allowing the plaintiff a chance to win
her federal claim.

Moreover, measuring the tolling orders against the chief
goals of section 1983 -- compensation and deterrence, see

[24]

Robertson, 436 U.S. at 590-91; Tomanio, 446 U.S. at 488-92 --
reveals no apparent inconsistency.  First, a state tolling rule
which "enhances" a plaintiff's "ability to bring suit and
recover damages for injuries" facilitates rather than frustrates
the underlying policy of compensation.  See Hardin v. Straub,
490 U.S. 536, 543 (1989) (holding that "[a] State's decision to
toll the statute of limitations during the inmate's disability
does not frustrate [section] 1983's compensation goal" since it
promotes recovery).  Second, the tolling orders do not frustrate
the goal of deterring constitutional torts.  Where an official
knowingly engages in unconstitutional conduct, expanding the
period of liability merely heightens the chance the official
will be called to account for it.  Id.  Even where the official
lacks knowledge and the violation is ongoing, "the plaintiff
will have an interest in enjoining" the misconduct, and the
tolling period per the orders is only three and a half months,
so "the time during which the official will unknowingly violate
the Constitution" will in any case be brief.  See id.

    Additionally, although "[u]niformity has [] been cited as a
federal policy which sometimes necessitates the displacement of
an otherwise applicable state rule of law," it "has not been
held to warrant the displacement of state statutes of
limitations for civil rights actions."  Tomanio, 446 U.S. at 489
(citing Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 465

(1975)).  Notably, in holding that a Louisiana survivorship law applied to section 1983 actions pursuant to section 1988, the Supreme Court in <u>Robertson</u> stated the following:

> [W]hatever the value of nationwide uniformity in areas of civil rights enforcement where Congress has not spoken, **in the areas to which [section] 1988 is applicable Congress has provided direction,** indicating that state law will often provide the content of the federal remedial rule. This statutory reliance on state law obviously means that **there will not be nationwide uniformity on these issues**.

436 U.S. at 593 n.11 (emphasis added).

Thus, the Supreme Judicial Court's tolling orders are not "inconsistent with federal law," <u>Tomanio</u>, 446 U.S. at 486.

### III. CONCLUSION

For the aforementioned reasons, the Court holds that the Supreme Judicial Court's tolling orders apply to section 1983 actions.  Accordingly, in allowing in part and denying in part the Defendants' motion to dismiss, ECF No. 17, the Court ruled that Silva's federal claims were timely.  <u>See</u> Order 1-3.

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[8]

---

[8] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 44 years.